**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEBRA LETVINUCK, | No. 10-55018 |
| Plaintiff - Appellant, | D.C. No. 2:06-cv-02831-PSG-JTL |
| v. | |
| AETNA LIFE INSURANCE COMPANY; BOEING COMPANY EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN, | MEMORANDUM* |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted June 8, 2011
Pasadena, California

Before: TROTT and RYMER, Circuit Judges, and BEISTLINE, Chief District
Judge.**

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\* The Honorable Ralph R. Beistline, Chief District Judge for the
District of Alaska, sitting by designation.

Debra Letvinuck appeals the district court's judgment for Aetna Life Insurance Co. and the Boeing Co. Employee Health and Welfare Benefit Plan (collectively, "Aetna"). The district court concluded that Aetna did not abuse its discretion in denying Letvinuck short-term and long-term disability benefits. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

I

We review de novo the district court's choice and application of the standard of review to decisions by ERISA fiduciaries.[1] *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 962 (9th Cir. 2006) (en banc). We review the district court's findings of fact for clear error. *Id.* Because the Plan unambiguously provided Aetna with discretion, we review Aetna's decision to terminate benefits for abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008); *Abatie*, 458 F.3d at 963. We consider Aetna's structural conflict of interest,[2] along with other case-specific factors, in determining whether the district court applied the correct level of skepticism to Aetna's decision to deny benefits. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630–31 (9th Cir. 2009).

---

[1] Letvinuck still carries the initial burden of proving her disability. *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

[2] Aetna both funds and administers the Plan's long-term disability benefits.

2

II

We remanded this case to the district court to apply *Abatie*'s "abuse of discretion" standard of review and to consider several factors that we believed might contribute to Aetna's conflict of interest. *Letvinuck v. Aetna Life Ins. Co.*, 319 Fed. App'x 661 (9th Cir. 2009). We now hold that those factors are sufficient to enhance the skepticism with which to view Aetna's denial of benefits.

First, Aetna gave no weight to the Social Security Administration's (SSA) decision that Letvinuck was disabled, nor did it provide an explanation. Although Aetna is not bound by the SSA's disability determination, "not distinguishing the SSA's contrary conclusion may indicate a failure to consider relevant evidence." *Montour*, 588 F.3d at 635. The SSA award was not mentioned by Aetna or Dr. Burton in initially denying Letvinuck's benefits. During the appeal process, Aetna, Dr. Anfield, and Dr. Schroeder acknowledged that Letvinuck had received an SSA award, but no further explanation was provided. Only when Letvinuck called after Aetna had denied her appeal did Aetna offer an explanation by trying to distinguish its standard for disability from the SSA's. In sum, "[e]vidence of a Social Security award of disability benefits is of sufficient significance that failure to address it offers support that the plan administrator's denial was arbitrary, an abuse of

3

discretion." *Salomaa v. Honda Long Term Disability Plan*, — F.3d —, 2011 WL 2040934, at *11 (9th Cir. 2011).

## III

Second, Aetna failed adequately to tell Letvinuck what "additional material or information [] was necessary for her to perfect the claim, and to do so in a manner calculated to be understood by the claimant." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870 (9th Cir. 2008) (alterations and quotations omitted). Aetna substantially based its denial of benefits on the lack of recent neuropsychological testing that objectively showed Letvinuck's disability. It also cited Dr. McCleary's 2004 neuropsychological tests as evidence that Letvinuck was not disabled. However, Aetna did not ask Letvinuck for more recent neuropsychological test results that showed her disability "at a time when [she] had a fair chance to present evidence on this point." *Id.* at 871. *See also Salomaa*, 2011 WL 2040934, at *11 ("[T]he plan administrator denied the claim largely on account of absence of objective medical evidence, yet failed to tell Salomaa what medical evidence it wanted."). Aetna's voice-mail at Dr. Weiner's office asking for "clinically objective findings demonstrating . . . a further decline" in her disability was not communicated to Letvinuck. *See Saffon*, 522 F.3d at 873

4

(communicating with a doctor rather than the Plan participant is not meaningful dialogue). To the extent that Letvinuck did provide neuropsychological test results, Aetna disregarded them because "the validity of the observed result was not tested." But Aetna denied Letvinuck's benefits without physically examining her. *Montour*, 588 F.3d at 634 (a "pure paper" review of a Plan participant's claim "raises questions about the thoroughness and accuracy of the benefits determination") (alterations and quotations omitted). Thus, Aetna failed to engage in a meaningful dialogue with Letvinuck and failed clearly to let her know what tests or records it required.

IV

For both reasons we view Aetna's decision with a high level of skepticism. Doing so, we conclude that Aetna abused its discretion in denying Letvinuck benefits. Aetna based its denial of benefits on the absence of specific medical evidence – evidence that Aetna did not tell Letvinuck she should obtain and send to Aetna to perfect her claim. Aetna did not meaningfully explain why it disagreed with the SSA's award of disability benefits, and only attempted to do so when Letvinuck called Aetna after it had already denied her appeal. Therefore, we

5

reverse the district court's judgment in favor of Aetna and remand to the district court with instructions to direct an award of benefits.

REVERSED.